```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/10/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
LOREN ACKER,                                                            :
:
Plaintiff,                                   :     12 Civ. 3620 (JMF)
:
-v-                                                 :     OPINION AND ORDER
:
ANTHONY WILGER, et al.,                                                 :
:
Defendants.                                  :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Loren Acker sues several of his former attorneys for legal malpractice and other claims in connection with what a state court judge described as "a disaster of a litigation caused primarily by [Acker's] attorneys" and an "appalling case of attorney misbehavior." (Decl. Eric M. Creizman (Docket No. 76) ("Creizman Decl."), Ex. LA-OO, at 24-25). Two Defendants, Daniel DiBenedetto and Alexander Chan, move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment with respect to all claims asserted against them. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part. In particular, the motion is denied except insofar as it seeks dismissal of Plaintiff's duplicative claims sounding in fraud and negligence, a stand-alone claim for punitive damages, and a claim for attorney's fees and costs associated with *this* lawsuit.

**BACKGROUND**

This case has a long and somewhat tortuous history, which will be summarized only to the extent relevant to this motion. The relevant facts, drawn from the Complaint and the admissible materials submitted by the parties, are uncontested except where noted; most were

memorialized by clerks or court reporters in state court. In any event, the facts are viewed in the light most favorable to Plaintiff, as he is the non-moving party. *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).

## A.   The Underlying State-Court Suit

Acker is an Arizona businessman who, with his son, owned and operated a luxury hotel for dogs called Woofspa & Resort, LLC ("Woofspa"). (Loren Acker's Rule 56.1 Resp. Statement Material Facts Defs. Daniel DiBenedetto and Alexander Chan (Docket No. 73) ("Pl.'s Rule 56.1 Statement") ¶ 1). On March 7, 2005, Mary Gentry — a former minority investor in Woofspa — filed suit against Woofspa, Acker, and his son in New York State Supreme Court in Manhattan. (Pl.'s Rule 56.1 Statement ¶¶ 5-9; Decl. Kenneth A. McLellan Supp. Defs. DiBenedetto and Alexander Chan's Mot. Summ. J. (Docket No. 70) ("McLellan Decl."), Ex. D). Gentry sought more than $300,000 in damages. (Pl.'s Rule 56.1 Statement ¶ 9).

Acker's wife, Darla Acker, prepared the answer in the Gentry lawsuit, but Acker filed the answer *pro se*. (*Id.* ¶ 10; McLellan Decl., Ex. A ¶ 9). On or about September 8, 2005, Acker's son retained Defendant DiBenedetto to represent Acker, Acker's son, and Woofspa in the Gentry lawsuit. (Pl.'s Rule 56.1 Statement ¶¶ 11-12; McLellan Decl., Ex. F).[1] DiBenedetto, in turn, retained Chan to perform legal services and serve as co-counsel in the case. (*See* Pl.'s Rule 56.1 Statement ¶ 13; McLellan Decl., Ex. J, at 43). On July 12, 2007, Acker filed an executed "Consent to Change Attorney" form in New York State Supreme Court purporting to substitute Defendant Anthony Wilger as his attorney of record. (Pl.'s Rule 56.1 Statement ¶ 14; McLellan Decl., Ex. K). The parties disagree, however, about the relative importance of this event and the

---

[1]   Defendants DiBenedetto and Chan were not paid for their services beyond the initial $2,500 retainer, which was paid by Acker's son. (McLellan Decl., Ex. F; McLellan Decl., Ex. H, at 148).

degree to which it ended DiBenedetto's and Chan's attorney-client relationships with Acker. (Pl.'s Rule 56.1 Statement ¶¶ 14, 16).

**B.     The State Default Judgment Proceedings**

In June 2006, Gentry moved for summary judgment. (McLellan Decl., Ex N, at 2). The Ackers and Woofspa, represented at this point by some combination of DiBenedetto, Chan, and Wilger, defaulted on the motion. (*Id.* at 3). On November 6, 2006, the Honorable Charles E. Ramos, New York State Supreme Court Justice, granted default judgment in Gentry's favor, in the amount of $56,276.18. *See Gentry v. Woofspa & Resort, LLC*, No. 103127/05 (N.Y. Sup. Ct. Nov. 6, 2006) (McLellan Decl., Ex. N, at 5-7).

In June 2007, the Ackers and Woofspa, represented by Chan — as of counsel to DiBenedetto — moved to vacate the default judgment against them on the grounds that DiBenedetto had not been served with a copy of Gentry's summary judgment motion papers. (McLellan Decl., Ex. R, at 21). After expressing skepticism about the veracity of DiBenedetto's representation that he had not been served with the motion, Justice Ramos denied DiBenedetto's motion to vacate and referred the case for determination of whether the motion had been submitted in bad faith. (*Id.* at 27-28). The referee determined that the motion had been submitted in bad faith. (Creizman Decl., Ex. LA-DD).[2]

In September 2007, Wilger filed a motion on Acker's behalf to renew the motion to vacate the default judgment. (McLellan Decl., Ex. Q, at 14). Justice Ramos denied the motion. (*Id.* at 23). Wilger then filed a notice of appeal; Chan posted a bond in the amount of

---

[2]     In June 2009, sanctions were imposed against DiBenedetto in the amount of $1,000, and judgment was entered against DiBenedetto, Woofspa, and the Ackers for Gentry's attorney's fees and costs in the amount of $23,357. (Creizman Decl., Ex. LA-HH, at 3). DiBenedetto, at this point represented by Defendant Ira Pollack, satisfied this attorney's fee judgment by paying the full amount, plus interest, to Gentry's attorney. (McLellan Decl., Ex. M).

$70,815.87, representing the Gentry default judgment plus interest, to stay enforcement of the judgment pending appeal.  (McLellan Decl., Ex. O; McLellan Decl., Ex. N, at 8).

C.     **Appeal from the State Default Judgment**

True to the theme of this case, the Ackers, through their attorneys, next defaulted on the *appeal* from the default judgment in the Gentry lawsuit by failing to perfect it.  Because of this default, the cash bond posted by Chan was released to Gentry.  (Creizman Decl., Ex. LA-II). Back before Justice Ramos, Gentry moved for, and was granted, additional attorney's fees in the amount of $1,416.32 and costs in the amount of $5,000.00.  (*Id.* at 4).  Judgment in the amount of $6,416.32 was entered on January 7, 2009 (the "January 2009 Judgment").  (*Id.*).[3]  In addition, the judgment included a penalty of $100 per day that the judgment was not paid, and provided for interest at New York's statutory 9% interest rate.  (*See id.*).  See also N.Y. C.P.L.R. 5004.

It is *this* judgment that ultimately gives rise to Plaintiff's claims in this case.  According to Acker, Defendants failed to inform him of the default on appeal and failed to satisfy the January 2009 Judgment for nearly three years, despite inquiries from the judgment creditor and Acker himself.[4]  ((Pl. Loren Acker's Opp'n Defs. DiBenedetto and Chan's Mot. Summ. J. ("Pl.'s Mem.") 10); *see also* Compl. (Docket No. 1) ¶¶ 18, 43).  Acker ultimately paid the judgment on May 24, 2012, by which time it had ballooned to $142,541.01 because of penalties and interest. (McLellan Decl., Ex. X).  Of this amount, $138,673.76 represented the original $6,416.32

---

[3]     Although the Complaint describes the judgment as being in the amount of "$6,146.32," (Compl. (Docket No. 1) ¶ 17) the judgment itself — which was attached as Exhibit I to the Complaint — lists it as $6416.32.  As a result, this Court construes the Complaint to be in accordance with the judgment.

[4]     The January 2009 Judgment appears to have been served on Acker when it was issued. (McLellan Decl., Ex. L).  There is, however, a genuine material dispute about whether Acker understood the document or its import.  (*See* Creizman Decl., Ex. LA-MM (email from Darla Acker to the Ackers' Arizona counsel, dated November 2009, asking whether the January 2009 Judgment, among others, had been satisfied)).

January 2009 Judgment plus penalties and interest; an additional $3867.25 represents additional attorney's fees and costs in enforcing the judgment. (Creizman Decl., Ex. LA-P).[5] In other words, like the proverbial tail wagging the dog, the penalties and interest came to matter far more than the January 2009 Judgment itself.

Even after paying the January 2009 Judgment, Acker, represented by the counsel who represents him in this case, continued his attempts to vacate the original default judgment. On May 1, 2012, Justice Ramos denied Acker's motion to vacate that judgment. (Creizman Decl., Ex. LA-OO, at 2, 27). Justice Ramos described the original proceedings as "a disaster of a litigation caused primarily by [Acker's] attorneys" and "an appalling case of attorney misbehavior." (*Id.* at 24-25). But Justice Ramos concluded that Acker's remedy was not vacatur of the judgment, but to "[g]o against these people who caused the problem" — namely, his former attorneys. (*Id.* at 25).

**D.     The Instant Suit**

Heeding Justice Ramos's words, Acker filed the Complaint in this case on May 2, 2012. (Docket No. 1). He names as Defendants Wilger, DiBenedetto, Chan, and Ira Pollack — who represented DiBenedetto, the Ackers, and Woofspa in a portion of the proceedings, *see supra* note 2 — and asserts the following claims: legal malpractice, indemnification, contribution, negligent misrepresentation, and fraud. (Compl. ¶¶ 39-57). He also seeks recovery on a theory of aiding-and-abetting liability against each of the Defendants. (*Id.* ¶¶ 58-60). He seeks punitive as well as compensatory damages. (*Id.* ¶¶ 61-62). Wilger filed a voluntary bankruptcy petition

---

[5]     This summary glosses over some detail, including an intermediate judgment, entered by Justice Ramos on July 22, 2009, in the amount of $24,905.00. (Creizman Decl., Ex. LA-JJ). That amount represented the original $6,416.32 plus penalties and interest through July 2009. It is technically *this* judgment that Plaintiff seeks recovery for, plus the additional penalties and interest that have accrued in the years since. (Compl. ¶ 42).

in July 2012, which caused this case to be automatically stayed with respect to him.  (Docket No. 14).  Pollack defaulted.  (Docket No. 24).

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Abuzaid v. Mattox*, 726 F.3d 311, 314 (2d Cir. 2013).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).  The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," however, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, however, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the

allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## DISCUSSION

In moving for summary judgment, Defendants raise four principal points.  First, they argue that they are entitled to summary judgment on Plaintiff's legal malpractice claims because Plaintiff has not adduced sufficient evidence to prove proximate cause.  (Mem. Law Supp. Defs.' Mot. Summ. J. (Docket No. 69) ("Defs.' Mem.") 10-16).  Second, they argue that Plaintiff's fraud and negligent misrepresentation claims should be dismissed as duplicative of his legal malpractice claims.  (*Id.* 17-19).  Third, they argue that Plaintiff's request for attorney's fees must be dismissed because there is no authority for granting attorney's fees.  (*Id.* 19-20).  Finally, they argue that the Complaint fails to allege sufficiently serious facts to support a claim for punitive damages, and that such request should therefore be dismissed.  (*Id.* 20-21).  Defendants do not move for dismissal of Plaintiff's claims for contribution, indemnification, and aiding-and-abetting liability.

**A.    Legal Malpractice Claims**

In New York, to sustain a claim for legal malpractice, a plaintiff must establish that his attorney breached the duty a lawyer owes to his client and that such breach was the proximate cause of an injury.  *See, e.g.*, *Rudolf v. Shayne, Dachs, Sanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007); *see also McCoy v. Feinman*, 99 N.Y.2d 295, 301 (2002).  These requirements are commonly numbered (1) duty, (2) breach, (3) causation, and (4) damages.  Here, Defendants test the sufficiency of Plaintiff's evidence with respect to the third element, causation, on the ground

that Plaintiff has failed to offer evidence suggesting that he could have prevailed in the Gentry lawsuit if he had other (presumably more diligent) counsel.  (Defs.' Mem. 12).

It is true that, where malpractice is alleged to have occurred in the context of an adversarial proceeding, a plaintiff seeking to prove causation must generally "show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence."  *Rudolf*, 8 N.Y.3d at 442.  But, significantly, this requirement is limited to legal malpractice claims that arise from an attorney's efforts in "preparing or conducting litigation."  *McKenna v. Forsyth & Forsyth*, 720 N.Y.S.2d 654, 656 (4th Dep't 2001); *accord Lindenman v. Kreitzer*, 775 N.Y.S.2d 4, 8 (1st Dep't 2004) ("[T]he requirement of proving a 'case within a case' . . . is a distinctive feature of legal malpractice actions arising from an attorney's alleged negligence in preparing or conducting litigation." (internal quotation marks omitted)).  And even when the malpractice claim does arise in the context of litigation, a plaintiff can show causation as long as he can prove that he "would not have incurred any damages" but for the lawyer's negligence.  *Rudolf*, 8 N.Y.3d at 442.

Defendants' argument overlooks this detail in the law governing legal malpractice.  With respect to the $6,416.32 that was imposed for attorney's fees and costs on the defaulted appeal, Plaintiff has adduced sufficient evidence to raise a genuine dispute as to the material fact of whether he "would not have incurred any damages, but for the lawyer's negligence."  *Rudolf*, 8 N.Y.3d at 442.  That is because Justice Ramos's decision to impose attorney's fees and costs was based at least in part on Gentry's attorney's affidavit, which set out the efforts he took on account of Defendants' default on Acker's behalf.  (*See* McLellan Decl., Ex. S; *accord* Creizman Decl., Ex. LA-II, at 2).  Thus, as to the original $6,416.32, Defendants have failed to show that there is no genuine dispute of material fact as to whether Defendants caused Plaintiff's injury.

With respect to the interest and penalties that accrued during the nearly three years in which the January 2009 Judgment went unpaid, Defendants' argument is even less convincing. There, to show that he "would not have incurred any damages" but for Defendants' conduct, Plaintiff must merely demonstrate that prompt payment would have forestalled the penalties and interest. *See Barnett v. Schwartz*, 848 N.Y.S.2d 663, 667-68 (2d Dep't 2007) ("[A] plaintiff-client in a legal malpractice action need prove only that the defendant-attorney's negligence was a proximate cause of damages."). The conclusion that earlier payment would have reduced Acker's damages follows naturally from the terms of the order authorizing them. (*See* Creizman Decl., Ex. LA-II). The order specifies that $100 in penalties will be added for each day the judgment is not satisfied (*id.*); thus, if a fact-finder were to credit Acker's evidence suggesting that a professionally responsible attorney would have paid the judgment earlier, it could reasonably conclude that Defendants' malpractice was the proximate cause of the additional penalties. The same logic applies to the interest.

DiBenedetto and Chan's other arguments with respect to the legal malpractice claims are even less persuasive. First, they contend that they no longer represented Acker at the time the judgment was entered and that they had no knowledge of the judgment. (Defs.' Mem. 14-15). These facts, however, are in dispute. (*See* Pl.'s Rule 56.1 Statement ¶¶ 14, 16, 22, 24).[6] Second, Defendants assert that they are entitled to summary judgment because Plaintiff has submitted no expert testimony on the duty lawyers owe to their clients. (Defs.' Mem. 15-16). Defendants rely on New York cases generally holding that expert testimony is necessary to sustain a malpractice

---

[6]   Defendants object to Plaintiff's reliance on an affidavit signed by Wilger (Creizman Decl., Ex. LA-I) in opposing their motion. (Reply Mem. Law Further Supp. Defs.' Mot. Summ. J. (Docket No. 78) 6-8). The Court need not resolve the issue, as it has not relied on the affidavit in any way; Plaintiff's other evidence suffices to raise a genuine dispute of material fact on this issue.

claim except where "the fact finder is competent to evaluate whether the defendant has deviated from the standard of care." (Defs.' Mem. 16). This, however, is just such a case. As the New York Court of Appeals has put it, "the simple answer is that the very nature of the acts complained of bespeaks improper treatment and malpractice." *Hammer v. Rosen*, 7 N.Y.2d 376, 380 (1960). Accordingly, Plaintiff's malpractice claims survive Defendant's motion.

### B. Fraud and Negligent Misrepresentation Claims

Next, Defendants move for summary judgment with respect to Plaintiff's fraud and negligent misrepresentation claims, on the theory that they are duplicative of his legal malpractice claims. Under New York law, claims for fraud are duplicative of malpractice claims if they constitute mere "concealment or failure to disclose one's own malpractice," *White of Lake George Inc. v. Bell*, 674 N.Y.S.2d 162, 163 (3d Dep't 1998) (alteration omitted), and claims for negligence are duplicative if they "arise from the same facts" as the malpractice action, *Conklin v. Owen*, 900 N.Y.S.2d 118, 120 (2d Dep't 2010). Although Plaintiff attempts to identify facts "supporting independent fraud and negligent misrepresentation claims" (Pl.'s Mem. 14-15), the facts simply relate to Wilger's, DiBenedetto's, and Chan's ongoing failure to satisfy the outstanding judgment. Accordingly, Plaintiff's fraud and negligence claims are duplicative of his malpractice claims and, thus, fail as a matter of law.

### C. Attorney's Fees

Third, Defendants seek summary judgment with respect to Plaintiff's demand for "attorney's fees and costs in moving to vacate the July 2009 Judgment, and in prosecuting this action." (McLellan Decl., Ex. CC, at 4). They argue, based on the traditional American rule, that Plaintiff must point to some authority entitling him to attorney's fees. (Defs.' Mem. 19-20). Plaintiff having failed to identify any statute or contract providing for attorney's fees or costs in

legal malpractice actions, they argue, they are entitled to summary judgment as to those claims. (*Id.* at 20).

Defendants are partly correct. Plaintiff has demonstrated no entitlement to attorney's fees in the instant action, but he may be entitled to attorney's fees and costs in seeking to undo the harm he suffered because of Defendants' alleged malpractice. *See, e.g.*, *Rudolf*, 8 N.Y.3d at 443 ("A plaintiff's damages may include litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct." (internal quotation marks omitted)). Thus, to the extent Plaintiff seeks to recover attorney's fees in *this* action, Defendants' motion is granted, but the motion is denied with respect to Plaintiff's claims for attorney's fees and costs related to his attempts to vacate the prior default judgment.

### D. Punitive Damages

Finally, Defendants claim they are entitled to summary judgment as to Plaintiff's claim for punitive damages on the grounds that (1) New York law does not allow pleading punitive damages as a separate cause of action and (2) Plaintiff has failed to adduce sufficient facts to support an award of punitive damages. (Defs.' Mem. 20-21). As to (1), the motion is uncontested (Pl.'s Mem. 16) and therefore granted. *See, e.g.*, *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 331 (S.D.N.Y. 2012) (collecting cases supporting the proposition that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way" (internal quotation marks omitted)). Accordingly, Plaintiff's stand-alone *claim* for punitive damages is dismissed as abandoned.

As to (2), however, there exists a genuine dispute as to whether Plaintiff is entitled to punitive damages (Pl.'s Rule 56.1 Statement ¶¶ 14, 16, 21), and no separate claim is necessary

for such recovery, *see Porter v. Allstate Ins. Co.*, 585 N.Y.S.2d 465, 465 (2d Dep't 1992). That is, based on a review of the entire record, the Court finds that Plaintiff has put forward evidence that, if credited by a fact-finder, could support an award of punitive damages. *See Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 372 (2d Cir. 1988) ("[S]tate courts have found pleadings adequate to state a claim for punitive damages where 'the wrong involves some violation of duty springing from a relation of trust or confidence[]' . . . ." (quoting *Oehlhof v. Solomon*, 76 N.Y.S. 716, 720 (1st Dep't 1902))). Thus, summary judgment is not appropriate as to Plaintiff's request for punitive damages generally.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Specifically, Plaintiff's claims for fraud, negligent representation, punitive damages, and attorney's fees and costs related to the filing of the instant lawsuit are DISMISSED. Plaintiff may, however, continue to pursue punitive damages as a remedy for his remaining claims, which include legal malpractice, aiding-and-abetting liability, contribution, and indemnification. Plaintiff may also seek recovery of attorney's fees and costs related to his efforts to vacate the underlying default judgment.

The parties are reminded that their Joint Pretrial Order and all related filings required by the Court's Individual Rules and Practices for Civil Cases must be submitted within thirty days. (Docket No. 15). The parties should be prepared to go to trial approximately two weeks thereafter. The parties shall immediately advise the Court by joint letter if they are interested in a referral to the assigned Magistrate Judge for purposes of settlement.

The Clerk of Court is directed to terminate Docket No. 67.

SO ORDERED.

Dated: January 10, 2014
       New York, New York

                                      JESSE M. FURMAN
                                   United States District Judge